**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No.  (04-5562)

_____

| | |
|---|---|
| **Tanesha M. McMillan**, | : |
| Plaintiff, | : |
| | : |
| v. | :   **OPINION** |
| | : |
| **Jo Anne B. Barnhart**, | : |
| Commissioner of Social Security | : |
| Defendant. | : |

_____

Stanley G. Sheats, Staff Attorney
Northeast New Jersey Legal Services
152 Market Street
Paterson, N.J. 07505-1710

    *(Attorney for Plaintiff)*

Karen G. Fiszer, Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278-0004

    *(Attorney for Defendant)*

**MARTINI, District Judge:**

    Plaintiff Tanesha M. McMillan ("McMillan") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability

1

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 10, 1998, McMillan, then 26 years old, sustained injuries to her right knee, back, and shoulder as a passenger in a car accident. (Record at 12, 107 [*hereinafter* "R."].) As a result, she was unable to return to work. (*Id*. at 30.) McMillan previously worked as an eye care technician, a merchandise quality controller, a home health aide, and a certified nurse's assistant ("CNA"). (*Id*. at 120.) McMillan's job as a home health aide and CNA required heavy lifting. (*Id*. at 43-46.) In addition, all four jobs required standing for extended periods of time. (*Id*. at 24-29, 43-46.)

On September 26, 2002 McMillan filed applications for DIB and SSI benefits, which were denied initially and on reconsideration. (*Id*. at 11.) Thereafter, McMillan requested a hearing by an administrative law judge ("ALJ"). (*Id*.) A hearing was held on May 4, 2004 before Administrative Law Judge Katherine C. Edgell ("ALJ Edgell"). In a decision dated June 25, 2004, ALJ Edgell denied McMillan's application. (*Id*.) ALJ Edgell noted that McMillan suffers from a herniated disc with lumbosacral sprain, anterior cruciate ligament tear, and cervical derangement, and found that these impairments were "severe." (*Id*. at 13.) ALJ Edgell concluded, however, that these impairments were not severe enough, either singly or in combination, to meet or equal any of the enumerated impairments that entitle a claimant to disability benefits. (*Id*.) ALJ Edgell also concluded that McMillan did not retain the residual functional capacity ("RFC") to perform the requirements of her past relevant work. (*Id*. at 15.)

ALJ Edgell then discussed in detail reports by McMillan's treating physician and other examining physicians, along with certain medical evidence and McMillan's own testimony. (*Id.* at 13-15.) ALJ Edgell found that McMillan retained the capacity to perform light work, noting that she can lift and carry 20 pounds occasionally and ten pounds frequently and can stand, walk, and sit six hours per day. (*Id.*) ALJ Edgell held that, based on McMillan's age, education, and her past work experience, other jobs exist in significant numbers that she could perform. (*Id.*) Applying this finding to McMillan's RFC, ALJ Edgell concluded that McMillan is not disabled. (*Id.*) Therefore, ALJ Edgell denied McMillan's request for benefits. (*Id.* at 17.) McMillan timely appealed ALJ Edgell's decision to this Court.

## II.     STANDARD OF REVIEW

An individual may be entitled to DIB or SSI benefits upon a finding of "disability" as defined by the Social Security Act. The term "disability" is defined as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) and 1382c(3)(A); *see also* 20 C.F.R. § 404.1505(a). "An impairment is not disabling unless it is of such severity that the claimant 'is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience engage in any other kind of substantial gainful work ... in the national economy.'" *Kelley v. Comm'r of Soc. Sec.*, No. 02-3572, 2004 U.S. Dist. LEXIS 28407, at *17-18 (D.N.J. June 30, 2004) (quoting 42 U.S.C. § 423(d)(2)(A)).

A five-step evaluation process, set forth in 20 C.F.R. § 404.1520, is used to evaluate

whether or not an individual is disabled.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118 (3d Cir. 2000).  In step one, the Commissioner determines whether the person is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a).  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.  *Burnett*, 220 F.3d at 118.  In step two, the Commissioner must next determine whether the claimant is suffering from a severe medical impairment.  20 C.F.R. § 404.1520(c).  If the claimant cannot show her impairment is severe, she is ineligible for disability benefits.  *Id*.  However, if the claimant demonstrates a severe medical impairment, the Commissioner must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability.  *Id*. at § 404.1520(d).  If the claimant's severe impairment satisfies step three of the analysis, the Commissioner will find the claimant disabled without considering other factors such as age, education, and experience.  *Id*. at § 404.1520(d).  Conversely, if the impairment is not equal to any listing, the Commissioner must proceed to steps four and five.  *Burnett*, 220 F.3d at 118.   In step four, the Commissioner determines if the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e).  The claimant has the burden of demonstrating her inability to perform past relevant work.  *Burnett*, 220 F.3d at 118 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).  If the claimant does not have the capacity to resume her past work, the evaluation will continue to the fifth step.  *Id*. at 118. At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(f); *Burnett*, 220 F.3d at 118.  If the claimant cannot perform other work in the national economy, the

Commissioner must grant disability benefits to the claimant.

In reviewing ALJ Edgell's decision, the district court exercises plenary review over her legal conclusions and is bound by her factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## III.   DISCUSSION

McMillan argues that ALJ Edgell's decision is not supported by substantial evidence.[1] Specifically, McMillan raises five arguments before the court. First, McMillan contends that her impairment equals a listed impairment because she suffers from post traumatic disc herniation with nerve root compression and desiccation. (Pl.'s Br. at 20-21.) Second, McMillan contends that ALJ Edgell improperly used the medical evidence from her treating physician, Dr. George Hermann, and ignored favorable findings from Dr. L. Vassallo, an examining physician retained by the Commissioner, to find her not disabled. (Pl.'s Br. at 23-24.) Third, McMillan asserts that ALJ Edgell failed to consider all of the relevant medical evidence pursuant to 20 C.F.R. §

---

[1] McMillan also states in her brief that issues exist as to whether or not ALJ Edgell's conclusions are erroneous as a matter of law. (Pl.'s Br. at 5-6.) However, McMillan's arguments focus only on ALJ Edgell's interpretation of the record evidence. Therefore, the Court's analysis will focus on whether or not ALJ Edgell's conclusions are based upon substantial evidence.

416.927, which requires an ALJ to consider every medical opinion she receives along with all other relevant evidence. (Pl.'s Br. at 25.) Fourth, McMillan argues that ALJ Edgell failed to properly consider her pain symptoms and failed to properly evaluate the credibility of her testimony. (Pl.'s Br. at 26.) Finally, McMillan asserts that ALJ Edgell erred in making her RFC determination because she did not comply with the requirements of SSR 96-8p, which states that the RFC assessment must be based on all of the relevant evidence in the case record. (Pl.'s Br. at 29-30.)

### A. Substantial Evidence Supports ALJ Edgell's Decision that McMillan's Impairments Do Not Meet or Equal the Listing of Impairments

McMillan first contends that ALJ Edgell's decision that her impairment does not meet or equal the listed impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04 ("Listing 1.04") is not based on substantial evidence. (Pl.'s Br. at 20-21.) Listing 1.04 states:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). Therefore, McMillan must show that she meets all of the specified medical criteria found in 1.04A, including both motor loss (atrophy

6

with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and a positive straight-leg raising test (sitting and supine). 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04. In ALJ Edgell's discussion of Listing 1.04, she found that McMillan's impairment did not meet all of the specified criteria in the listing. (R. at 13.) McMillan argues that this is error. She contends that substantial evidence supports a finding that her impairment meets this listing.

The Court disagrees. In discussing whether McMillan's impairment met the criteria of Listing 1.04, ALJ Edgell stated:

> The medical evidence indicates that the claimant has history of motor vehicle accident, herniated disc with lumbosacral sprain, anterior cruciate ligament tear and cervical derangement, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. at 13.)

While the Court feels that ALJ Edgell could have provided more detail in support of this holding, we cannot escape the conclusion that this holding is based on substantial evidence. First, as noted by ALJ Edgell, Dr. Vassallo found McMillan to have full muscle strength, normal sensation with no evidence of any motor deficits, no neurological deficit in either the upper or lower extremities, and an ability to use her hands for gross and fine manipulations. (*Id*. at 13-14.) Second, ALJ Edgell also stated that Dr. Friedman found McMillan to have full muscle strength, intact sensation, and normal coordination. (*Id*.) Because motor loss is defined in Listing 1.04 as "atrophy with associated muscle weakness or muscle weakness," ALJ Edgell's discussion of both doctors' findings of full muscle strength and Dr. Vassallo's finding of a lack of motor deficits substantially supports the conclusion that McMillan does not suffer from motor

7

loss as defined by Listing 1.04. Additionally, the record supports a finding that McMillan did not suffer from sensory or reflex loss. First, Dr. Hermann, who was McMillan's own treating physician, issued a report finding that McMillan did not suffer from any sensory or reflex loss. (R. at 189.) Second, Dr. Vassallo found that McMillan had normal sensation, lacked neurological deficit, and was able to use her hands for gross and fine manipulations. (R. at 173-175.) These facts substantially support ALJ Edgell's conclusion that McMillan did not suffer from sensory or reflex loss. (R. at 13.)

Substantial evidence also supports ALJ Edgell's decision regarding the straight-leg raising test. In her discussion of Dr. Friedman's findings, ALJ Edgell noted that Dr. Friedman found McMillan's straight-leg raising test to be negative, and that McMillan should be able to perform all activities in a seated position and a standing one if given the opportunity to alternate positions. (R. at 14.) Nevertheless, McMillan argues that Dr. Hermann's positive straight-leg raising test findings should be binding and cites *Morales v. Upfel* for the proposition that "[a] cardinal principle guiding disability eligibility determinations is that an ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." 225 F.3d 310, 317 (3d Cir. 2000). Placed in context, however, *Morales* favors a treating physician's reports over those of non-treating, *non-examining* physicians. *Id.* (emphasis added). In the instant case, ALJ Edgell has rejected the report of Dr. Hermann, the treating physician, for that of Dr. Friedman, a consulting, examining physician. This is an accord with *Morales*, which allows for an ALJ to reject treating physicians' opinions outright on the basis of contradictory medical evidence. *Id.* Here, this contradictory medical evidence is the negative straight-leg raising test

findings of Dr. Friedman. Allowing the ALJ to consider the reports of other examining physicians and resolve conflicting medical evidence is also consistent with federal court jurisprudence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In light of the foregoing, the Court cannot hold that ALJ Edgell's decision that McMillan's impairment does not equal Listing 1.04 is not based upon substantial evidence.

      **B.     ALJ Edgell Properly Evaluated All of the Relevant Medical Evidence**

McMillan next argues that the manner and method by which ALJ Edgell evaluated the medical and other evidence was deficient. In particular, McMillan contends that ALJ Edgell failed to properly evaluate medical evidence obtained from McMillan's treating physician, Dr. Hermann, and that she improperly used the evidence from Dr. Hermann to support her conclusion that McMillan is not disabled. (Pl.'s Br. at 24.) McMillan also contends that ALJ Edgell ignored favorable evidence from the consultative examiner, Dr. Vassallo. (*Id*. at 25.) Similarly, McMillan argues that ALJ Edgell failed to consider every medical opinion and improperly evaluated those of Dr. Hermann, Dr. Friedman, and Dr. Vassallo[2] in violation of 20 C.F.R. § 416.927.[3] (*Id*. at 25-26.)

An ALJ may rely upon the opinions of state agency medical consultants and other program physicians as evidence to reach a conclusion about a claimant's medical impairment(s). *See* 20 C.F.R. §§ 404.1512(b)(6) and 416.912(b)(6). In making his or her determination, an ALJ

---

[2]The Court assumes McMillan to mean Dr. Vassallo though McMillan refers to a "Dr. Pollack" absent from the record. (Pl.'s Br. at 26.)

[3]20 C.F.R. § 416.927 requires the Commissioner to examine all of the medical and other evidence in making her determination, and to weigh inconsistent evidence pursuant to the rules set forth in 20 C.F.R. § 416.927(d)(1)-(6).

need not use particular language or adhere to a particular format, but must sufficiently develop the record and explain his or her findings to permit meaningful review. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d. Cir. 2004). "[W]hen the medical testimony or conclusions [present to an ALJ] are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir 1981). However, such a decision need not "be accompanied by a medical or scientific analysis which would be far beyond the capability of a non-scientist." *Id*.

      McMillan's contentions regarding the ALJ's evaluation of the medical evidence are without merit. ALJ Edgell devoted two paragraphs of substantive analysis to Dr. Hermann's reports in which she noted McMillan's MRI results, pain complaints, and treatment plans and described McMillan's physical capabilities, as determined by Dr. Hermann, despite the recognized impairments. (R. at 13.) Specifically, ALJ Edgell focused on McMillan's ability to walk at a reasonable pace and lift up to 30 pounds, but noted the limitations in squatting, stooping, kneeling, and bending. (*Id*.) ALJ Edgell also analyzed the reports of Dr. Vassallo and Dr. Friedman in two other paragraphs of her opinion, noting each doctor's diagnosis and determination of McMillan's remaining physical capabilities. (R. at 14.) Neither Dr. Friedman nor Dr. Vassallo found any physical limitations, and Dr. Friedman found that McMillan was independent in her activities of daily living and ambulation, that she was in no acute distress upon examination, that she had no trouble dressing or undressing or getting on or off the exam table, and that she should be able to perform all activities in a seated position and a standing one if given the opportunity to alternate positions. (R. at 14, 193.)

      The Court recognizes that ALJ Edgell did not discuss every individual piece of medical

10

evidence on the record; however, the ALJ systematically and accurately noted McMillan's impairments as found by each physician, the treatment McMillan underwent for said impairments, and the remaining physical capabilities as determined by each physician. This is more than sufficient to qualify as "substantial evidence." *See*, *e.g.*, *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (noting that the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; "in most cases a sentence or short paragraph would probably suffice.") Thus, while ALJ Edgell did not analyze and reconcile every piece of evidence found in the three doctors' reports, her analysis was more than sufficient to permit meaningful review and her conclusions supported by substantial evidence.

        **C.**     **ALJ Edgell Properly Evaluated McMillan's Pain Symptoms and the Credibility of McMillan's Testimony**

McMillan next contends that ALJ Edgell failed in general to properly evaluate McMillan's pain symptoms and the credibility of McMillan's testimony. Specifically, McMillan argues that ALJ Edgell erred by not according greater weight to McMillan's testimony that her pain was disabling because medical evidence supports such a claim, and that ALJ Edgell erred because she did not provide the basis for her conclusion that McMillan's testimony was not credible. (Pl.'s Br. at 26-27.) McMillan also argues that ALJ Edgell failed to properly evaluate her pain symptoms because she did not evaluate the intensity and persistence of McMillan's pain.[4] (Pl's Br. at 28-29.)

---

[4]McMillan also argues that ALJ Edgell seemed to use the absence of medical treatment after 1999 against her. (Pl.'s Br. at 28.) The ALJ's opinion simply refers to the conservative treatment received by McMillan after her motor vehicle accident and notes that McMillan did not receive further treatment after 1999 (McMillan testified that this is because she cannot find a doctor that will accept her HMO (R. at 34), although it had been two years since the last doctor refused her insurance). (R. at 14.) To conclude from this observation that the ALJ

Testimony of subjective pain is entitled to great weight, particularly when supported by competent medical evidence, but an ALJ may reject a claim of disabling pain where she has considered the subjective pain, specified her reasons for rejecting the claim, and has supported her conclusion with medical evidence on the record. *Garcia v. Comm'r of Soc. Sec.*, No. 03-3775, 2004 U.S. App. LEXIS 7573, at *939 (3d Cir. Apr. 16, 2004). An ALJ is entitled to determine if subjective complaints of pain are consistent with both the objective medical evidence and other evidence on the record, including claimant's own statements. 20 C.F.R. §§ 404.1529 and 416.929(a).

ALJ Edgell properly evaluated McMillan's credibility and pain symptoms. The ALJ recognized that McMillan's subjective complaints of pain are reasonably consistent with the medical evidence, but found that the pain was not of such intensity, frequency, or duration as to preclude substantial gainful activity. (R. at 14.) In her decision, the ALJ supported her conclusion by pointing to and discussing the following medical evidence on the record: the treating physician's report indicating McMillan could lift and carry up to 30 pounds and had no difficulty walking, the essentially normal physical examination conducted by the consultative physician, Dr. Vassallo, and the essentially normal orthopedic evaluation conducted by another consultative physician, Dr. Friedman. (R. at 14.) ALJ Edgell also relied on McMillan's own statements and actions that indicate McMillan leads an active existence despite her allegations. (R. at 14-15.) For instance, ALJ Edgell noted that McMillan testified that she cares for her young children, does light shopping, uses public transportation, pays bills and does some

---

inappropriately used the lack of treatment against her is to make a substantial inferential leap. Nevertheless, the issue is not dispositive as the well-developed nature of the ALJ's analysis on the issue of pain and credibility relegates this to a minor point.

cooking. (R. at 14-15.) Given the ALJ's thorough discussion, we cannot find that ALJ Edgell failed to specify her reasons for rejecting McMillan's subjective assertions of pain nor failed to support her conclusions with medical evidence on the record. Therefore, we cannot hold that ALJ Edgell's findings regarding McMillan's assertion of pain were not based on substantial evidence.

> **D.      Subsantial Evidence Supports ALJ Edgell's Conclusion that Ms. McMillan Retains a Residual Functional Capacity to Perform Light Work**

McMillan alleges that ALJ Edgell failed to consider all evidence on the record in determining McMillan's RFC to be "light work." Specifically, McMillan points again to her subjective complaints of pain and her testimony of how this pain limits her daily activities to argue that ALJ Edgell's RFC determination is flawed. (Pl.'s Br. at 30-31.)

Residual functional capacity is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by her impairment. 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. "In making a residual functional capacity determination, the ALJ must consider all evidence before [her]. Although the ALJ may weigh the credibility of the evidence, [s]he must give some indication of the evidence which [s]he rejects and [her] reasons for discounting such evidence." *Burnett v. Commissioner of S.S.A.*, 220 F.3d 112 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted).

ALJ Edgell found that McMillan's RFC of light work enables her to lift and carry 20

pounds occasionally and ten pounds frequently, and that she can stand, walk, and sit for 6 hours per day. (R. at 15.) ALJ Edgell addressed McMillan's pain complaints and did not find them to be credible, citing the treating physician's report that indicates McMillan can lift and carry up to 30 pounds and has no difficulty walking, the essentially normal physical examination conducted by the consultative physician, and the essentially normal orthopedic evaluation conducted by Dr. Friedman. (R. at 14.) Furthermore, ALJ Edgell relied on McMillan's own statements and actions which indicate McMillan leads an active existence despite her allegations of debilitating pain. (R. at 14-15.) This is more than enough to show that ALJ Edgell's decision regarding McMillan's RFC is based on substantial evidence. *See*, *e.g.*, *Izzo v. Commissioner of Soc. Sec.*, No. 05-3420, 2006 U.S. App. LEXIS 16282, at *14-16 (3d Cir. Apr. 21, 2006) (finding substantial evidence to support an ALJ's RFC determination of light work where the ALJ relied upon the reports of two consultative medical examiners to discredit the extent of claimant's alleged pain symptoms). Given her thorough analysis of both the medical evidence and McMillan's subjective pain complaints, we cannot find that ALJ Edgell's RFC determination is not supported by substantial evidence.

**IV.   CONCLUSION**

For the foregoing reasons, this Court finds that the ALJ's analysis was adequate and supported by substantial evidence. Consequently the Commissioner's decision denying Disability Insurance Benefits and Supplemental Security Income benefits to Plaintiff Tanesha M. McMillan is affirmed.

**Dated:** August 22, 2006                                                              s/William J. Martini
                                                                                        **William J. Martini, U.S.D.J.**